UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROB LEVINE,  :  <br>    Plaintiff,  :  <br>                  :  <br>                  :  <br> v.               :  <br>                  :  <br> ANDREW SAUL, COMMISSIONER OF  :  <br> SOCIAL SECURITY,  :  <br>    Defendant.  :  <br>                  :  | C.A. No. 19-569WES |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Rob Levine is an attorney in good standing who is licensed to practice law in Rhode Island, having been duly admitted by Rhode Island's Supreme Court; among his clients are individuals seeking disability benefits under the Social Security Act ("the Act"). Plaintiff has filed a one-count complaint against the Commissioner of Social Security ("Commissioner"), in reliance on two federal statutes, 5 U.S.C. § 500(b) and 42 U.S.C. § 406(a)(1). These statutes provide that an attorney who is admitted by the highest court of any state and remains in good standing is eligible to represent claimants before the Commissioner; § 500(b) adds the requirement of the filing of a written declaration by the attorney that they[1] are qualified and authorized. Plaintiff's suit challenges the Commissioner's longstanding regulation – 20 C.F.R. § 404.1707 (and its analog, 20 C.F.R. § 416.1507)[2] – which requires that a Social Security

---

[1] In this report and recommendation, I face a familiar grammatical conundrum – what pronoun is appropriate to refer to a single human of unspecified gender. To resolve it, I am experimenting with an emerging solution: the use of they/their instead of the more traditional default he/his. See "Singular they," https://en.wikipedia.org/wiki/Singular_they (last visited Sept. 2, 2020).

[2] The Act is implemented through Title II (disability insurance benefits) and Title XVI (supplemental security income); there are identical sets of regulations for each. Plaintiff's amended complaint mentions only 20 C.F.R. §

claimant must sign a notice (using Form SSA 1696 or other writing) designating an attorney as their representative in dealings with the Social Security Administration ("SSA"). Plaintiff seeks redress in the form of a judicial declaration voiding the Commissioner's regulation as inconsistent with, and contrary to, the statutory framework adopted by Congress.

With no material facts in dispute, now pending before the Court are dueling dispositive motions. The Commissioner has filed a motion to dismiss, while Plaintiff countered with a motion for summary judgment. ECF Nos. 6 & 11. Both motions have been referred to me for report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the Court grant the Commissioner's motion to dismiss and deny as moot Plaintiff's motion for summary judgment.

I. **Procedural Background**

The Court begins by explaining how a small procedural knot was untangled. Plaintiff filed his complaint in October 2019. ECF No. 1. The Commissioner subsequently moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6), challenging not only the merits of the claim, but also raising the Court's subject matter jurisdiction based on Plaintiff's failure to mention anything beyond the Declaratory Judgment Act. ECF No. 6. Plaintiff objected to the motion to dismiss and filed his counter motion for summary judgment. ECF Nos. 10 & 11. On June 4, 2020, three days after the Commissioner replied to Plaintiff's objection to the motion to dismiss, Plaintiff moved to "amend/correct" the complaint by adding the specific averment that subject matter jurisdiction is based on 28 U.S.C. § 1331 and that, for the waiver of sovereign immunity, Plaintiff relies on 5 U.S.C. § 702. ECF Nos. 15 & 15-1. However, he forgot to attach

---

404.1707, which relates to Title II, and does not discuss its identical analog for implementation of Title XVI, 20 C.F.R. § 416.1507. Despite that omission, the Court accepts that both versions are in issue. For efficiency, this report and recommendation refers only to 20 C.F.R. § 404.1707.

2

the supporting memorandum explaining the amendment.  See generally id.  The following day (after an inquiry from the clerk), Plaintiff filed the missing memorandum, but mistakenly titled it as a second motion to "amend/correct."  ECF No. 16.  In an attempt to clean up the mess efficiently, the Court granted Plaintiff's *second* motion, ECF No. 16, deeming it to be a motion for leave to file the supporting memorandum out of time.  See June 5, 2020 Text Order.  Unfortunately, this exacerbated the confusion – the parties misunderstood the Court's ruling as substantively granting the motion to amend.  Accordingly, on June 8, 2020, Plaintiff filed his amended complaint.  ECF No. 17.

To get the case back on track and ensure that the confusion had not prejudiced either party, the Court held a telephone conference.  As a result of a discussion with the parties, the Court granted Plaintiff's *first* motion to amend/correct the complaint.  See June 19, 2020 Text Order.  The Court and parties also agreed that (1) Plaintiff need not refile the amended complaint so that ECF No. 17 would be the operative complaint; and (2) the Commissioner need not refile his motion to dismiss, so that ECF No. 6 would be the operative responsive pleading, provided that, based upon the allegations in the amended complaint, which the Commissioner agreed solved the jurisdictional problem,[3] the Commissioner would no longer be pressing the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), and the Court should disregard the portion of the brief focused on that argument.

## II.  Standards of Review

### A.  Motion to Dismiss and Motion for Summary Judgment

---

[3] The Court is independently satisfied that, because there is no claim before the SSA, the jurisdictional bar of 42 U.S.C. § 405(h) does not apply, and there is proper federal question jurisdiction pursuant to 28 U.S.C. § 1331.  See generally Moriarty v. Colvin, 806 F.3d 664, 667-68 (1st Cir. 2015).  A limited waiver of the sovereign immunity of the United States is established by Plaintiff's invocation of 5 U.S.C. § 702.  MacMann v. Titus, 819 F.2d 8, 10 (1st Cir. 1987).

In considering a Fed. R. Civ. P. 12(b)(6) motion, the court must accept as true all plausible factual allegations in the challenged pleading and draw all reasonable inferences in claimant's favor. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In so doing, the court is guided by the now familiar standard requiring enough facts to state a claim that is plausible: if "the plaintiffs [can]not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In performing the Fed. R. Civ. P. 12(b)(6) plausibility analysis, exhibits attached to the complaint are properly considered part of the pleading. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where the parties have filed dueling dispositive motions, the standard of review does not buckle. Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996). The court takes up each motion seriatim, applying the appropriate standard to each.

    B.    Declaratory Relief

Because the complaint requests declaratory relief, the Court must view Plaintiff's claims through the prism of the Declaratory Judgment Act. See generally 28 U.S.C. § 2201(a). The Declaratory Judgment Act provides that in a case of "actual controversy within its jurisdiction . . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." Id. The Act, however, does not impose an "unflagging duty" upon courts to decide declaratory judgment actions nor does it grant an "entitlement" to parties to demand declaratory relief. Diaz-Fonseca v. Puerto Rico, 451 F.3d 13,

39 (1st Cir. 2006). Federal courts retain "substantial discretion" in deciding whether to grant declaratory remedies. Id.

### III.   The Allegations in the Amended Complaint

Plaintiff alleges that he is an attorney in good standing, licensed to practice in Rhode Island, who represents claimants before the SSA. ECF No. 17 ¶¶ 1, 13. As established by the attachments to the amended complaint, Plaintiff has had an intermittent but longstanding (since at least 2012, and again in 2019) disagreement with the Commissioner regarding the need to have at least some of his clients fill in Form 1696, with particular focus on whether the claimants must sign in wet ink rather than electronically, which the Commissioner has insisted on. ECF Nos. 17; 17-1; 17-2. In the letters framing this controversy, Plaintiff has advised the Commissioner of his position that the regulation imposing the separate written notice requirement (20 C.F.R. § 404.1707)[4] is inconsistent with two federal statutes: 5 U.S.C. § 500(b)[5] and 42 U.S.C. § 406,[6] so that these clients should not have been required to sign anything. ECF

---

[4] 20 C.F.R. § 404.1707 provides:

> We will recognize a person as your representative if the following things are done:
>
> (a) You sign a written notice stating that you want the person to be your representative in dealings with us.
> (b) That person signs the notice, agreeing to be your representative, if the person is not an attorney. An attorney does not have to sign a notice of appointment.
> (c) The notice is filed at one of our offices if you have initially filed a claim or have requested reconsideration; with an administrative law judge if you requested a hearing; or with the Appeals Council if you have requested a review of the administrative law judge's decision.

[5] 5 U.S.C. § 500(b) provides:

> An individual who is a member in good standing of the bar of the highest court of a State may represent a person before [a federal] agency on filing with the agency a written declaration that he is currently qualified as provided by this subsection and is authorized to represent the particular person in whose behalf he acts.

[6] 42 U.S.C. § 406(a)(1) provides in relevant part:

> An attorney in good standing who is admitted to practice before the highest court of the State, Territory, District, or insular possession of his residence or before the Supreme Court of the

5

No. 17 ¶ 14; ECF No. 17-1 at 3 ("There is no statutory requirement for wet pen and ink signatures or, indeed, any claimant signature at all as it relates to appointment of an attorney representative"). In response, the Commissioner rejected Plaintiff's position, including his requested compromise that certain of his clients sign electronically, and recommended that Plaintiff "follow [the] rules."[7] ECF No. 17-2 at 3.

Since its promulgation some forty years ago, the Commissioner has enforced 20 C.F.R. § 404.1707, the regulation relating to what the Commissioner requires from the claimant before authorizing SSA staff to communicate with an attorney regarding the intensely confidential affairs of that claimant, including to provide the attorney with access to the claimant's medical information. In the present, the Commissioner requires the claimant to sign and file Form SSA 1696 or a similar writing, designating the attorney as the "representative of your choice to represent you on any claim or asserted right under any of our programs." Instructions for Completing Form SSA-1696 (02-2020) UF at 1, https://www.ssa.gov/forms/ssa-1696.pdf (last visited Sept. 2, 2020). To put further flesh on the bones of the regulation, the Commissioner has implemented POMS[8] GN 03910.040 - entitled "Appointment and Revocation of Appointment of

---

United States or the inferior Federal courts, shall be entitled to represent claimants before the Commissioner of Social Security.

[7] At the hearing, the Commissioner withdrew his argument that the amended complaint does not present a ripe and real dispute. Any lingering ambiguity was removed by Plaintiff's supplementation of the amended complaint with his declaration supporting his motion for summary judgment, averring that the 20 C.F.R. § 404.1707 requirement has adversely impacted his practice by delaying the receipt of fees and sometimes causing the loss of clients. ECF No. 11-2 at 2-7.

[8] The Program Operations Manual System ("POMS") is an internal manual for SSA employees that contains "publicly available operating instructions for processing Social Security claims"; it functions as a guide for SSA employees. See generally Downing v. Saul, No. 19-cv-1047-PB, 2020 WL 4289425, at *4 n.3 (D.N.H. July 7, 2020). POMS instructions "do not have binding force, although courts frequently consider them in interpreting the SSA's statutory and regulatory policies." Kubetin v. Astrue, 637 F. Supp. 2d 59, 64 (D. Mass. 2009) (internal quotation marks omitted); Willey v. Ives, 696 F. Supp. 1388, 1400 (D. Me. 1988) ("POMS guidelines do not have the force and effect of law").

Representative." ECF No. 17 ¶ 11. This interpretation of the § 404.1707 claimant-signature requirement applies to the completion of the SSA Form 1696 and provides, in pertinent part:

> [A] claimant's appointment . . . of a person as his or her representative must be in writing, and must be filed with SSA . . . . [T]he original document or notice of appointment retained by either party must contain the claimant's signature in ink.

ECF No. 17 ¶ 11.[9] Without clearly explaining why, Plaintiff also references POMS DI 11005.056 – entitled "Signature Requirements for Form SSA-827" – which provides, in relevant part, that "[w]e require pen and ink signatures in any situation where we do not permit the Internet or attestation signature processes." ECF No. 17 ¶ 12. POMS DI 11005.056 appears to be entirely irrelevant to what Plaintiff has placed in issue in this case.[10]

For a remedy, Plaintiff asks the Court for a declaration that 20 C.F.R. § 404.1707, together with its interpreting POMS GN 03910.040, are "inconsistent with and . . . contravene[]" 5 U.S.C. § 500(b) and 42 U.S.C. § 406(a)(1). ECF No. 17 at 5. He contends that he should be allowed to represent claimants before the SSA upon the submission of nothing more than his written declaration that he is a member in good standing of the bar of the highest court of a state

---

[9] POMS GN 03910.040 was subsequently amended after oral argument in this matter. See POMS Recent Changes, GN 03910 TN 20, effective July 23, 2020, https://secure.ssa.gov/apps10/reference nsf/instructiontypecode!openview&restricttocategory=POMT (last visited Sept. 2, 2020). The "revisions [did] not change or introduce new policy or procedure." See id. at GN 03910 TN 20.

[10] POMS DI 11005.056 has nothing to do with attorney admission. See Program Operations Manual System (POMS) DI 11005.56 Signature Requirements for Form SSA-827, https://secure.ssa.gov/apps10/poms.nsf/lnx/0411005056 (last visited Sept. 2, 2020). It relates to SSA Form 827, by which the claimant (without regard to whether he has an attorney) authorizes and requests their physicians, other health care providers, educators and employers, as well as others in possession of confidential or personal information, to disclose such information to the SSA, the state agency processing the disability claim, and the physicians and other professionals engaged by the SSA to consult on the application. See generally Instructions for Completing the SSA-827, https://www.ssa.gov/forms/ssa-827-inst.pdf (last visited Sept. 2, 2020). POMS DI 11005.056 allows the claimant to sign releases for confidential records by attestation, by the internet, or in ink and instructs the SSA staff by the language quoted in the amended complaint that ink signatures are the default if criteria permitting internet or attestation are not present. Given its irrelevancy and in light of the parties' clarification at the hearing that the reasonableness of neither of the POMS is challenged in this case, POMS DI 11005.056 will not be discussed further.

and that he is authorized to represent the particular person on whose behalf he acts.  Id.  He argues that any additional prerequisite burdening his ability to represent an SSA claimant, such as the requirement that his client must also sign a notice as mandated by 20 C.F.R. § 404.1707, should be declared void.  Id.  Plaintiff also requests attorney's fees and costs in connection with bringing this action.[11]  Id.

I add an important observation about what is not in issue in this case.  The Court was confused by the conflation, in the amended complaint and the briefs, of the signature requirement in the regulation and the wet-ink requirement in the POMS.  At the hearing on the motions, the Court asked the parties to clarify, pointedly asking both sides whether this case requires the Court separately to determine the reasonableness and appropriateness of the wet-ink signature requirement in the POMS.[12]  The parties concurred that it does not.  Plaintiff explained that his claim is laser focused on what he alleges is a fatal inconsistency between the two statutes (5 U.S.C. § 500(b) and 42 U.S.C. § 406) and 20 C.F.R. § 404.1707, the promulgated regulation, which provides, "[y]ou sign a written notice stating that you want the person to be your representative in dealings with us."  20 C.F.R. § 404.1707(a).  He advised that this case is not separately challenging the reasonableness or enforceability of the interpretation of § 404.1707 in the POMS GN 03910.040, which provides that the regulation's signature requirement means a wet-ink signature, as opposed to an electronic signature.  Therefore, this case affects POMS GN 03910.040 only in that it would fall away if § 404.1707 is void as contrary to law.  Nor (despite the reference to it in the amended complaint and his papers) does Plaintiff purport to tackle the

---

[11] An issue for another day is whether recovery of attorney's fees will be barred because it falls outside of the United States' waiver of sovereign immunity in 5 U.S.C. § 702.  In re Perry, 882 F.2d 534, 544-45 (1st Cir. 1989) ("[t]he federal sovereign is immune from an award of attorneys' fees in the absence of a statute to the contrary").

[12] Importantly, the challenged regulation does not mention wet-ink signatures.  It simply calls for a signed written notice with no indication how the claimant's signature is to be applied to the notice.

8

reasonableness or enforceability of POMS DI 11005.056, which lays out the procedure for the SSA's collection of confidential medical and other records related to the claimant's disability. See n.10 *supra*. Therefore, in this report and recommendation, this Court has not addressed the wet-ink signature requirement,[13] an issue that has been and continues to be litigated around the country.[14]

## IV. The Parties' Positions

Plaintiff contends that Congress delegated to the SSA the authority to make rules and regulations that are not inconsistent with the provisions of the Social Security Act. See generally 42 U.S.C. § 405(a); 42 U.S.C. §§ 401, *et seq*. He argues that 5 U.S.C. § 500(b) and 42 U.S.C. § 406(a)(1) speak clearly and unambiguously and contain the only requirements for attorney admission to represent claimants before the SSA that may be imposed. Therefore, the additional regulatory requirement that the claimant must sign a notice confirming that the attorney is authorized adds a roadblock that is contrary to law. Any signature requirement (whether ink or electronic) imposed on the claimant is an "additional [admission] 'hoop' that attorneys and their clients must jump through (but which Congress did not intend they jump through) in order to gain access to the claims process." ECF 10-1 at 27. Plaintiff concludes that the SSA's regulation directly conflicts with the statutory scheme in § 500(b) and § 406(a)(1).

---

[13] During these proceedings, the Court was advised that the Commissioner has temporarily but indefinitely suspended the wet-ink signature requirement in POMS GN 03910.040 due to the COVID-19 pandemic. ECF No. 14 at 12 n.3. Because this case does not specifically challenge the wet-ink signature requirement, but rather tackles the requirement that the claimant must sign a separate notice confirming representation by their attorney, without regard to the manner of signing, there is no need to deal with whether this moots the claim.

[14] See, e.g., Nat'l Fed'n of the Blind v. Saul, No. 20-cv-1160 (TSC), 2020 WL 4201637, at *1 (D.D.C. July 22, 2020) (plaintiffs claim that requiring wet-ink instead of electronic signatures for certain SSA documents violates the Rehabilitation Act as applied to blind claimants); Willoughby v. Colvin, No. 6:13-cv-1365-ORL, 2014 WL 5038550, at *1, 5 (M.D. Fla. Sept. 30, 2014) (claimant challenges SSA guidelines requiring ink-signatures and argues, *inter alia*, that they are contrary to the Electronic Signature Act, 15 U.S.C. §§ 7001-7006). In mid-August 2020, a new case was filed in the District of Columbia by the United Spinal Association challenging the wet-ink signature requirement as contrary to the Electronic Signature Act, the Agency Practices Act, 5 U.S.C. § 500, and the First Amendment. See United Spinal Ass'n, Inc. v. Saul, 1:20-cv-02236-TSC (D.D.C. 2020).

The Commissioner contends that 5 U.S.C. § 500(b)[15] and 42 U.S.C. § 406(a)(1) merely prohibit federal agencies from propounding their own supplemental *attorney* admission requirements for duly admitted members of the bar. Section 404.1707 and the interpreting POMS GN 03910.040 do not relate to an attorney's eligibility to practice before the SSA; rather, they focus on the *claimant's* notice to the SSA that its staff can and should communicate with a particular attorney as the claimant's authorized representative. The Commissioner concludes that the regulation is not inconsistent with and does not contravene the language of either § 500(b) or § 406(a)(1).

## V.    Analysis

Because Plaintiff's claim is anchored in the interpretation of statutory language, the Court starts with the foundational tenet of statutory construction – that the "lodestar in interpreting a statute is to effectuate congressional intent" and the journey to determine that intent begins with the text of the statue itself. City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020). The first phase of the trek is to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S.

---

[15] Not pertinent to the outcome of this case is the parties' dispute regarding whether the Commissioner is constrained by the language of 5 U.S.C. § 500(b). In this case, the Commissioner has declined to "concede that the general provisions" of § 5 U.S.C. § 500(b) apply to Social Security cases in light of the "agency and program-specific terms of 42 U.S.C. § 406." ECF No. 6 at 21 n.13. Instead, he sidesteps the issue, pointing out that, whether or not 5 U.S.C. § 500(b) applies to Social Security cases, 20 C.F.R. § 404.1707 is not inconsistent with, or contrary to, § 500(b); therefore, the Court need not determine the role played by § 500(b) in the Social Security context. ECF No. 6 at 21 n.13. The Supreme Court has declined to clarify the question. Richardson v. Perales, 402 U.S. 389, 409 (1971) ("[w]e need not decide whether the APA [Administrative Procedures Act] has general application to social security disability claims, for the social security administrative procedure does not vary from that prescribed by the APA"); see Clarke v. INS, 904 F.2d 172, 177 (3d Cir. 1990) ("the Supreme Court . . . has never ruled definitively on the applicability of the APA to Social Security proceedings"). For his part, Plaintiff argues that § 500(b) applies to the SSA, somewhat against interest, in that § 500(b) requires the attorney to do more than is required by § 406(a)(1). For purposes of this case, the Court assumes, without deciding, that § 500(b) applies, mindful that § 406(a)(1) is specific to the SSA, while § 500(b) more generally applies to federal agencies, so that § 406(a)(1) would prevail if there were material conflicts. Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976) ("a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment") (internal quotation marks omitted).

337, 340 (1997). "Where the terms of a statute are clear, a court must give the words their plain and obvious meaning." Marques v. Fitzgerald, 99 F.3d 1, 5 (1st Cir. 1996) (citing O'Connell v. Shalala, 79 F.3d 170, 176 (1st Cir.1996). In deciding whether the language is plain and unambiguous, the Court reads the statute's words in context with "a view to their place in the overall statutory scheme." Comcast of Me./N.H., Inc. v. Mills, 435 F. Supp. 3d 228, 235 (D. Me. 2019); see also Smith v. United States, 508 U.S. 223, 229 (1993) ("[l]anguage, of course, cannot be interpreted apart from context"). Once it concludes that the language is plain, the sole function of the Court – at least when disposition by text is not absurd – is to enforce the statute according to its terms. United States v. Tracy, No. 1:18-CR-00081-JAW, 2019 WL 1409841, at *5 (D. Me. Mar. 28, 2019). The Court need not turn to legislative history or search for other interpretive aids. See generally Telecom. Reg. Bd. Of P.R. v. CITA-Wireless Ass'n, 752 F.3d 60, 66 (1st Cir. 2014) ("[w]here the text of a statute is clear . . . [the court] need not go on to consider the . . . legislative history to divine Congress'[] intent"). These principles of statutory construction apply equally to the Commissioner's promulgated regulations. Morales v. Sociedad Espanola de Auxillo Mutuo y Beneficiencia, 524 F.3d 54, 59 (1st Cir. 2008).

Turning to the language of the statutes relevant to this case, the Court begins with an examination of § 406(a)(1), the statute dealing with attorney admission to practice before the SSA, in which Congress proclaimed that an

> <u>attorney in good standing</u> who is <u>admitted to practice</u> before the highest court of the State, Territory, District, or insular possession of his residence or before the Supreme Court of the United States or the inferior Federal courts, <u>shall</u> be <u>entitled</u> to <u>represent claimants</u> before the Commissioner of Social Security.

42 U.S.C. § 406(a)(1) (emphasis added). The plain and unambiguous language of § 406(a)(1) pertains to and governs general *admission* requirements for attorneys to be eligible to practice before the SSA. The statute succinctly lays out two prerequisites for "represent[ation of]

11

claimants" before the SSA: an attorney must be (1) "in good standing;" and (2) "admitted to practice" before a particular court, for example, as relevant here, the Rhode Island Supreme Court. Id. Reviewing § 406(a)(1) in its entirety in context, as the Court must, leads to but one conclusion: the statute defines the attorney admission requirements for an attorney to qualify (that is, to be *admitted*) to practice before the SSA. See generally Me. Pooled Disability Trust v. Hamilton, 927 F.3d 52, 57 (1st Cir. 2019) ("we must rest our analysis on the statute as a whole, giving due weight to the context in which the text at issue appears"). It provides simply and clearly that "attorneys in good standing may[,] without further qualifications[,] represent claimants" before the SSA. Cordoba v. Massanari, 256 F.3d 1044, 1046 n.1 (10th Cir. 2001) (emphasis added).

In a wider pass, to practice before a federal agency, Congress enacted § 500(b), in which it proclaimed that

> [a]n individual who is a member in good standing of the bar of the highest court of a State may represent a person before [a federal] agency on filing with the agency a written declaration that he is currently qualified as provided by this subsection and is authorized to represent the particular person in whose behalf he acts.

5 U.S.C. § 500(b) (emphasis added). Like § 406(a)(1), § 500(b)'s plain, ordinary and unambiguous language clearly applies to attorney *admission* requirements, setting up two prerequisites for "represent[ation of] a person before" a federal agency; (1) an individual must be a "member in good standing of the bar of the highest court of a State;" and (2) provide a written declaration to the agency attesting to their qualifications and authorization to represent the applicable individual.[16] Id. Like § 406(a)(1), 5 U.S.C. § 500 "governs who may practice before

---

[16] Section 500(b)'s written declaration requirement is an obligation imposed on the attorney that is not included in § 406(a)(1). See n.15 *supra*. As clarified by POMS GN 03910.040, staff are instructed to strongly encourage the signatures of both attorney and claimant but only the claimant's signature is required.

a federal agency." Waller v. United States, No. CV-S-01-1190-KJD PAL, 2002 WL 31476649, at *4 (D. Nev. Aug. 7, 2002).  As interpreted, § 500(b) "merely prohibits [federal] agencies from erecting their own supplemental admission requirements for duly admitted members of a state bar[.]" Polydoroff v. Interstate Commerce Comm'n, 773 F.2d 372, 374 (D.C. Cir. 1985) (emphasis added).  Section 500(b)'s plain, clear and unambiguous language establishes the admission requirements in order to represent individuals before federal agencies and prohibits the erection of further admission requirements.

Based on this analysis, Congress' intent is clear: in enacting both § 406(a)(1) and § 500(b) it established uniform attorney admission requirements for eligibility to practice before the SSA specifically, and federal agencies generally.  This conclusion – that the clear, plain and unambiguous language of § 406(a)(1) and § 500(b) speaks specifically to attorney admission requirements – is consistent with the positions of both Plaintiff and the Commissioner who concur that there is no need to "look[] to legislative history to confirm textual intuitions." Ruthardt, 194 F.3d at 184.

The final leg of the statutory construction phase of this journey is to examine 42 U.S.C. § 405(a)(1), Congress's empowerment of the Commissioner with "full power and authority to make rules and regulations and to establish procedures, not inconsistent with the [provisions of 42 U.S.C. §§ 401, *et seq*.], which are necessary or appropriate to carry out such provisions."  42 U.S.C. 405(a) (emphasis added).  This statutory grant of authority means that the Commissioner may promulgate rules that have the force of law as long as they are appropriate to carry out the provisions of the Act and not inconsistent with its provisions, including, as relevant here, 42 U.S.C. § 406(a)(1).  See generally Mayo Found. for Med. Educ. & Research v. United States,

13

562 U.S. 44 (2011) (when Congress delegated authority to agency generally to make rules, they carry the force of law).

Having completed its analysis of the pertinent statutes, the Court reaches the last leg – the examination of the language of the challenged regulation. Plaintiff's argument is grounded in the regulation and POMS GN 03910.040; he contends that they contravene § 406(a)(1) and § 500(b) by imposing a supplemental *admission* requirement on attorneys – specifically, he contends that the submission of a notice of appointment signed by the *claimant* is inconsistent with the clear language of § 406(a)(1) and § 500(b).

The problem with Plaintiff's argument is that the clear and unambiguous language of 20 C.F.R. § 404.1707 regulates only what is necessary for the SSA to recognize the *claimant's* appointment of an attorney to be their representative (*if* the claimant chooses to appoint one); that is, it calls for a written notice signed by the *claimant* stating they want the identified individual to be their representative in dealing with the SSA. As clarified at promulgation, the "purpose of this requirement is to protect confidential personal information from unauthorized disclosure, while facilitating its release to designated representatives." Federal Old Age, Survivors, and Disability Insurance and Supplemental Security Income for the Aged, Blind, and Disabled, 45 Fed. Reg. 52078, 52078 (August 5, 1980). The regulation imposes no obligation on the attorney. Indeed, by contrast with a non-attorney representative, it specifically provides that an attorney need *not* even sign the notice; POMS GN 03910.040 adds only that the claimant's signature must be ink and that staff are instructed to strongly encourage the signatures of both attorney and client. Thus, neither the regulation nor the POMS that interprets it governs or impacts, in any manner, whether an *attorney* representative has met the foundational admission requirements to be eligible to practice before the SSA. Moreover, the SSA regulation that does

address attorney admission or eligibility requirements (20 C.F.R. § 404.1705) is entirely consistent with § 406(a)(1). Based upon the clear and unambiguous language of the regulation, the Court concludes that § 404.1707 and POMS GN 03910.040 do not conflict with, or contravene, either § 406(a)(1) or § 500(b).

To counter the force of this analysis, Plaintiff marshals a 1982 never-cited-as-persuasive district court decision from West Virginia, McDaniel v. Israel, 534 F. Supp. 367 (W.D. Va. 1982). In McDaniel, the plaintiffs requested declaratory relief voiding 20 C.F.R. § 404.1707 as inconsistent with the Agency Practice Act, 5 U.S.C. § 500. 534 F. Supp. at 368-69. McDaniel holds that, because § 404.1707 requires the claimant to perform a task (the submission of a written notice of appointment) that § 500 does not impose, § 404.1707 is void. 534 F. Supp. at 368, 370. McDaniel overlooks that § 404.1707 merely sets out the requirement for the claimant's notice of appointment of a representative; it is § 404.1705 that sets out the attorney admission/eligibility requirements for "[w]ho may be [a] representative." 20 C.F.R. § 404.1705 & (a)(1). Further, McDaniel contradicts its own finding that § 404.1707 is "squarely in conflict" with 5 U.S.C. § 500 in also finding that the "provisions of [§ 404.1707] do not expressly controvert the provisions of" 5 U.S.C. §§ 500, *et seq*. 534 F. Supp. at 370. Tacitly acknowledging that its outcome may be error, McDaniels subsequently amended the judgment to eliminate class relief and to limit its applicability to the attorney representing the named plaintiffs only. McDaniels v. Israel, 540 F. Supp. 404 (W.D. Va. 1982); McDaniels v. Israel, 573 F. Supp. 273 (W.D. Va. 1982). The journey ended, I decline to follow the holding or adopt the reasoning of McDaniel.

VI. **Conclusion**

Because the language of 20 C.F.R. § 404.1707 is not inconsistent with, or in contravention of, either 42 U.S.C. § 406(a)(1) or 5 U.S.C. § 500(b), the Court recommends that the Commissioner's motion to dismiss (ECF No. 6) be granted. Based upon this recommendation, the Court also recommends that Plaintiff's counter motion for summary judgment (ECF No. 11) be denied as moot. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 3, 2020